IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| THOMIS D. BALL,<br>   Plaintiff<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>  Commissioner of Social Security,<br>   Defendant | Civil Action No. 2:10cv00065<br><br>**REPORT AND RECOMMENDATION**<br><br>BY: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Thomis D. Ball, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq.* (West 2003 & Supp. 2011). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a

Case 2:10-cv-00065-JPJ-PMS   Document 18   Filed 08/22/11   Page 1 of 15   Pageid#: 323

reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Ball protectively filed his applications for DIB and SSI on February 22, 2008, alleging disability as of October 1, 2006, due to ongoing seizures, chronic back problems and a learning disability. (Record, ("R."), at 92-94, 96-97, 114, 118.) The claims were denied initially and on reconsideration. (R. at 53-54, 56-60, 62-64.) Ball then requested a hearing before an administrative law judge, ("ALJ"). (R. at 65.) The hearing was held on August 18, 2009, at which Ball was represented by counsel. (R. at 23-39.)

By decision dated September 23, 2009, the ALJ denied Ball's claims. (R. at 12-22.) The ALJ found that Ball meets the insured status requirements of the Act through September 30, 2011. (R. at 14.) The ALJ also found that Ball had not engaged in substantial gainful activity since October 1, 2006, the alleged onset date. (R. at 14.) The ALJ determined that the medical evidence established that Ball had severe impairments, namely a cognitive disorder, not otherwise specified, a depressive disorder, not otherwise specified, a seizure disorder, by history, without current medication, a degenerative joint disorder, mild chronic obstructive pulmonary disease and chronic lumbar strain, but he found that Ball's impairments did not meet or medically equal the requirements for any impairment listed at 20

-2-

C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14.) The ALJ found that Ball had the residual functional capacity to perform simple, repetitive, medium[1] work that did not require more than occasional climbing, kneeling and crawling and did not require him to work around heights, hazards and fumes. (R. at 18.) Therefore, the ALJ found that Ball was able to perform his past relevant work as a steel cutter, a mud mixer, a stocker, a dishwasher, a parking lot attendant, a janitor, a cleaner and a fry cook. (R. at 21.) Thus, the ALJ found that Ball was not under a disability as defined under the Act and was not eligible for benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2011).

After the ALJ issued his decision, Ball pursued his administrative appeals, (R. at 6), but the Appeals Council denied his request for review. (R. at 1-5.) Ball then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2011). The case is before this court on Ball's motion for summary judgment filed March 15, 2011, and the Commissioner's motion for summary judgment filed April 14, 2011.

## *II. Facts*

Ball was born in 1967, (R. at 92, 96), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Ball completed the sixth grade in school and attended special education classes. (R. at 26, 121-22.) Ball also said he had been retained before. (R. at 26.) He has past relevant work experience as a steel

---

[1] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2011).

cutter, a mud mixer, a stocker, a dishwasher, a parking lot attendant, a janitor, a cleaner and a fry cook. (R. at 27-30, 119.) Ball also claims he has a learning disability and is a slow learner. (R. at 118.)

Earl Glosser, a vocational expert, was present and testified at Ball's hearing. (R. at 34-38.) Glosser classified Ball's work as a steel cutter as light[2] and unskilled to semi-skilled, as a mud mixer as sedentary[3] and semi-skilled, as a parking lot attendant as light and unskilled, as a janitor as light and unskilled, as a stocker as light to medium and unskilled, as a fry cook as light and unskilled to semi-skilled, and as a dishwasher as light and unskilled. (R. at 35.) Glosser was asked to consider a hypothetical individual of Ball's age, education and work experience who was limited as indicated by the assessments of Dr. William Humphries, M.D., and David S. Leen, Ph.D. (R. at 36-37, 191-94, 206-10.) Glosser testified that such an individual would be limited to relatively simple and repetitive, medium, light and sedentary work, similar to much of Ball's former work. (R. at 36-37.) Glosser also testified that such an individual could perform the job of an inspector at both the sedentary and light levels of exertion. (R. at 38.) Glosser was next asked to consider the same individual, but who would have to lie down three to four times a day and who was limited in his abilities to sit and to stand. (R. at 38.) Glosser testified that

---

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2011).

[3] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2011).

there would be no jobs available that such an individual could perform. (R. at 38.)

In rendering his decision, the ALJ reviewed records from Dr. William Humphries, M.D.; Dr. Shirish Shahane, M.D., a state agency physician; David S. Leen, Ph.D., a licensed clinical psychologist; Richard J. Milan Jr., Ph.D., a state agency psychologist; Dr. Donald Williams, M.D., a state agency physician; and Joseph Leizer, Ph.D., a state agency psychologist.

On June 21, 2008, Ball was examined by Dr. William Humphries, M.D., at the request of Disability Determination Services. (R. at 191-95.) Ball claimed that he had been experiencing back pain for the previous eight years and that his pain was worsened by standing, walking and lifting objects. (R. at 191.) Ball also reported a history of seizures. (R. at 191.) Dr. Humphries found that Ball's physical examination was within normal limits. (R. at 192-93.) Dr. Humphries reported that Ball had a slightly reduced range of motion in his back without kyphosis. (R. at 192.) Ball had no scoliosis and no paravertebral muscle spasm. (R. at 192.) Dr. Humphries reported that Ball had some tenderness to palpation of the paraspinal muscles, and his straight leg raise was negative. (R. at 192.) Ball's lower extremity range of motion was slightly reduced in both hips due to lumbar discomfort; however his range of motion in both knees and ankles was within normal limits. (R. at 192.) Dr. Humphries observed Ball getting on and off the examination table without difficulty, and further noted that Ball was able to heel and to walk with assistance for balance. (R. at 193.) Auscultation of Ball's lungs revealed clear and equal breath sounds that were slightly distant with no rales, wheezes or rhonchi. (R. at 193.) Dr. Humphries diagnosed seizure disorder, by history, without current medication

treatment; mild degenerative joint disease of the hands and feet; mild chronic obstructive pulmonary disease, ("COPD"); and chronic lumbar strain. (R. at 194.) He found that Ball would be limited to sitting, standing and walking six hours in an eight-hour workday and to occasionally lifting items weighing up to 50 pounds and frequently lifting items weighing up to 25 pounds. (R. at 194.) Dr. Humphries also found that Ball could occasionally climb, kneel and crawl, with no restrictions on his abilities to stoop or to crouch. (R. at 194.) He found that Ball should avoid heights, hazards and fumes. (R at 194.)

On July 9, 2008, David S. Leen, Ph.D., a licensed clinical psychologist, evaluated Ball at the request of Disability Determination Services. (R. at 206-10.) Leen's Psychology Report is dated July 14, 2008. (R. at 206.) Ball reported that he had a seizure disorder and that his most recent seizure was six to seven months previously. (R. at 207.) Ball further reported that he had both generalized and "staring" seizures as frequently as two to three times a month. (R. at 207.) Ball also reported a history of kidney problems and back pain. (R. at 207.) Ball's mental status examination revealed that he was grossly orientated with concrete, relevant and logical thought process. (R. at 207.) Leen administered the Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), which revealed a verbal IQ score of 69, placing Ball in the markedly impaired range of intelligence, a performance IQ score of 77, and a full-scale IQ score of 70, which placed Ball in the range of borderline intellectual functioning. (R. at 208-09.) Leen stated that these IQ tests scores were "deemed valid estimates of at least his current and recent levels of intellectual functioning." (R. at 209.) Leen also stated, "There is no highly suggestive evidence … that he had ever functioned intellectually at a significantly

higher level than he demonstrates on testing at this time." (R. at 209.)

Leen diagnosed a cognitive disorder, not otherwise specified, and a depressive disorder, not otherwise specified. (R. at 209.) Ball's then-current Global Assessment of Functioning score, ("GAF"),[4] was assessed at 52[5]. (R. at 209.) Leen reported that Ball was unable to perform complex or challenging work activities with or without additional supervision. (R. at 210.) He noted that Ball was able to consistently perform relatively simple and repetitive work activities in a timely and appropriate manner. (R. at 210.) Leen reported that Ball was able to maintain reliable attendance in the workplace, to accept instructions from supervisors and to deal appropriately with co-workers and the public on a consistent basis, to complete a normal workweek without interruptions and to deal with usual stressors of competitive work. (R. at 210.)

On July 14, 2008, Dr. Shirish Shahane, M.D., a state agency physician, opined that Ball had the residual functional capacity to perform light work. (R. at 197-203.) He found that Ball could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 199.) No manipulative, visual or communicative limitations were noted. (R. at 199-200.) Dr. Shahane opined that Ball should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation and avoid moderate

---

[4] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994.)

[5] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning...." DSM-IV at 32.

-7-

exposure to hazards. (R. at 200.) Dr. Shahane concluded that Ball's statements regarding his condition were partially credible. (R. at 202.)

On July 15, 2008, Richard J. Milan Jr., Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Ball suffered from an organic mental disorder and an affective disorder. (R. at 211-24.) Milan reported that Ball was moderately restricted in his activities of daily living; experienced mild difficulties in maintaining social functioning and experienced moderate difficulties in maintaining concentration, persistence or pace. (R. at 221.) Milan found that Ball had no episodes of decompensation. (R. at 221.)

That same day, Milan completed a mental assessment indicating that Ball was moderately limited in his ability to understand, remember and carry out detailed instructions and to set realistic goals or make plans independently of others. (R. at 226-27.) Milan reported that Ball was able to meet the basic mental demands of competitive work on a sustained basis. (R. at 228.) It is clear that Milan reviewed Leen's report because he stated that "Leen's opinion is adequately supported by the overall evidence in file." (R. at 228.) Nonetheless, he also stated that "[t]he evidence does not suggest or support Mental Retardation or its equivalent." (R. at 228.)

On December 9, 2008, Dr. Donald Williams, M.D., a state agency physician, opined that Ball had the residual functional capacity to perform light work. (R. at 239-45.) He found that Ball could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 241.) No manipulative, visual or communicative limitations were noted. (R. at 241-42.) Dr. Williams found that Ball should avoid concentrated

-8-

exposure to fumes, odors, dusts, gases and poor ventilation and avoid all exposure to hazards. (R. at 242.)

On December 10, 2008, Joseph Leizer, Ph.D., a state agency psychologist, completed a PRTF indicating that Ball suffered from an organic mental disorder and an affective disorder. (R. at 246-60.) He reported that Ball was mildly restricted in his activities of daily living and in maintaining social functioning and experienced moderate difficulties in maintaining concentration, persistence or pace. (R. at 256.) He found that Ball had not experienced any episodes of decompensation. (R. at 256.)

That same day, Leizer completed a mental assessment indicating that Ball was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods and to set realistic goals or make plans independently of others. (R. at 262-63.) Despite Leizer's recognition that Ball had limited intelligence, (R. at 265), he nonetheless stated that Ball's level of adaptive functioning would preclude mental retardation. (R. at 265.)

### III. *Analysis*

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if

not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1250(a), 416.920(a) (2011).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2011); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated September 23, 2009, the ALJ denied Ball's claims. (R. at 12-22.) The ALJ determined that the medical evidence established that Ball had severe impairments, namely a cognitive disorder, not otherwise specified, a depressive disorder, not otherwise specified, a seizure disorder, by history, without current medication, a degenerative joint disorder, mild chronic obstructive pulmonary disease and chronic lumbar strain, but he found that Ball's impairments did not meet or medically equal the requirements for any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14.) The ALJ found that Ball had the residual functional capacity to perform simple, repetitive, medium work that did not

require more than occasional climbing, kneeling and crawling and did not require him to work around heights, hazards and fumes. (R. at 18.) Therefore, the ALJ found that Ball was able to perform his past relevant work as a steel cutter, a mud mixer, a stocker, a dishwasher, a parking lot attendant, a janitor, a cleaner and a fry cook. (R. at 21.) Thus, the ALJ found that Ball was not under a disability as defined under the Act and was not eligible for benefits. (R. at 22.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

In his brief, Ball argues that that the ALJ erred in finding that his condition did not meet or equal the listed impairment for mental retardation found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C). (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-11.) Because I cannot determine whether the ALJ even properly considered whether Ball's condition met the listed impairment for mental retardation, I recommend that the court vacate the ALJ's decision and remand Ball's claims for further consideration.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Ball contends that his mental impairment meets or equals the criteria for § 12.05(C), the listing for mental retardation. To meet the impairment requirements of § 12.05(C), a claimant's mental functioning must be limited to the extent that he scores between 60 and 70 on a valid IQ test, and he must suffer from another impairment that imposes a significant work-related limitation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C) (2011). Additionally, the mental deficits must have manifested during the claimant's developmental stage, i.e., prior to age 22. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2011).

Leen found that Ball had a verbal IQ score of 69, a performance IQ score of 77 and a full-scale IQ score of 70. (R. at 209.) Thus, these scores place Ball within the range required by § 12.05(C). Furthermore, the record contains evidence that Ball's mental deficits manifested before age 22 in that he finished only through the sixth grade in special education classes. Also, Ball stated that he had been diagnosed with a learning disorder and was a slow learner. Also, the ALJ specifically found that Ball suffered from other impairments that imposed significant work-related limitations, i.e. severe depressive disorder, seizure disorder, a degenerative joint disorder, mild COPD and chronic lumbar strain. (R. at 14.)

While the ALJ's opinion shows that he specifically considered whether Ball's impairment met the criteria for the conditions found at § 11.02 (epilepsy), § 1.04 (disorders of the spine), § 3.02 (chronic pulmonary insufficiency), § 12.02 (organic mental disorders), and § 12.04 (affective disorders), there is no mention of his consideration of whether Ball's condition met § 12.05.

Instead, the ALJ appears to inappropriately focus on the opinions of the psychological examiners which state that Ball can work despite his intellectual deficiencies. While that may be so, a claimant's residual functional capacity should be considered by the ALJ only after he decides whether the claimant's condition meets or equals a listed impairment which would require a finding of disability. Based on the evidence presented in this case, the ALJ should have considered whether Ball's condition met the listing for mental retardation. To not do so was error.

For all of these reasons, I find that substantial evidence does not exist in the record to support the ALJ's finding that Ball's condition did not meet or equal the criteria for § 12.05(C), the listing for mental retardation.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence does not exist to support the Commissioner's finding that Ball's mental impairment did

>           not meet or equal the criteria for § 12.05(C), the listing for
>           mental retardation; and
>
>    2.    Substantial evidence does not exist to support the
>          Commissioner's finding that Ball was not disabled under
>          the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Ball's and the Commissioner's motions for summary judgment, vacate the final decision of the Commissioner denying benefits and remand Ball's claims to the Commissioner for further development.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2011):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.
>
> Failure to file timely written objections to these proposed findings and

-14-

recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: August 22, 2011.

s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE